SHEPHERD *ads.* HEDDEN.

1. H. was the owner of a farm, which he offered to sell at $125 per acre; S. offered to sell it for him, and an agreement was made between them that H. should ask $130 per acre, and not sell below that price; and in case S. procured a purchaser, and effected a sale, he was to have a commission of $5 per acre for selling. *Held,* that the contract was not against public policy, and was valid.

2. If an agent or broker is the means of bringing the parties together, although the offer which is accepted be made by the purchaser to the principal in person, and the agent afterwards draws the writings, and receives the purchase money, he is entitled to his commissions.

Case certified from Monmouth Circuit.

Argued before the Chief Justice, and Justices ELMER, HAINES, and BROWN.

*J. Parker,* for defendant.

*Bedle,* for plaintiff.

The CHIEF JUSTICE. The points presented for decision arose upon a set-off claimed by the defendant against the plaintiff.

The defendant had been agent and attorney for the plaintiff, and claimed in this action, as brokerage, $250 for selling the plaintiff's farm for him, which was at the rate of $5 the acre.

On the trial, among other things, the defendant testified that the plaintiff employed him to sell his farm; that the agreement was that defendant was to have the whole control, and that Hedden was to do as he told him; that the farm was to be advertised, and in the meantime the defendant was to try to sell it at private sale. The farm contained about 50 acres; the plaintiff wanted $125 an acre for it, clear. The defendant testified that the plaintiff made a bargain with him to sell it; that he agreed to pay him for selling it, as a compensation, all it brought over $125 an acre; if it did not bring more, he was to have nothing. The defendant undertook to sell it on these terms, and the arrangement between him and plaintiff was, that if anybody came to the plaintiff to buy, he was to say that it could not be bought for less than $130.

The defendant testified that he advertised the farm for private sale; afterwards he went to Field, who afterwards became the purchaser, to sell it to him; that Field refused, at first, to buy all, and he refused to sell a part; that he knew that Field wanted a part which was surrounded by his farm, over which there was a right of way to it, and therefore he would buy the rest; that he went two or three times to Field to bargain with him; that the price was all that parted them, and Field said he would go to plaintiff and try to get it cheaper; that he told him to go and try; that he understood he did go, and that

plaintiff refused to take less than $130, as he had been instructed to, and Field said he would take the land. Defendant testified he had an agreement written for $130 an acre, and took it over to Field, and defendant and he signed it, and Field paid him $10 to bind the bargain; that he prepared the deed, and plaintiff signed it, and it was delivered to Field, who paid the plaintiff the money in his presence for the farm. The defendant testified that he was not a licensed lawyer, but was the legal adviser of the plaintiff in the settlement of his business, and had advised him to sell the farm in question, as a mode of extricating himself from the troubles in which he was involved.

On this evidence the court charged the jury, that admitting all that defendant swore to be true, he was not entitled to the $5 per acre, as he did not make the sale, and that the agreement for the payment of the money to the defendant was against public policy.

Upon a rule to show cause, the Circuit Court certified these two questions to this court for its advisory opinion.

1. Was the contract between the defendant and plaintiff contrary to public policy, and therefore void?

As the case is before us, no question of fraud or imposition or mental imbecility is involved. It must be assumed that the plaintiff did contract with defendant, being of sufficient capacity to make a contract.

I am at a loss to perceive what there was in the relation between the parties to prevent their contracting as to the amount of compensation to be paid for the services of the defendant in effecting the sale of plaintiff's property. The defendant was the adviser of the plaintiff in his difficulties, and had advised the sale, and agreed to effect it for a stipulated compensation contingent on the amount to be realized for the land above $125 per acre, the fixed price of the plaintiff.

Courts of law have never adopted the principles which regulate the action of courts of equity in adjudicating

upon contracts made between parties standing in confidential relations, at least to the extent to which they have been carried by courts of equity. *Fox* v. *McReth*, 2 *Bro. C. C.* 400, 2 *Cox* 320, is the leading case on that subject. In this case Lord Thurlow enunciated the proposition, that if a trustee, though strictly honest, buys an estate himself, and then sells it for more, yet according to the rules of a court of equity, from general policy, and not from any peculiar imputation of fraud, a trustee shall not be permitted to sell to himself, but shall remain a trustee to all intents and purposes.

The principle has been extended by subsequent decisions in England and this country, so as to comprehend a large class of cases where the fiduciary relation exists, and courts of equity have given relief by holding the party to his character of trustee, and compelling him to account as such, or by setting aside a sale to him in violation of his duty as trustee to act for the benefit of his *cestui que trust*, and not for his own, at the election of the *cestui que trust*.

The principle upon which this doctrine is founded is that the trustee ought not to be permitted to make use of the knowledge he has, in his capacity as trustee, acquired of the nature and value of the estate of the *cestui que trust*, so long as he is trustee, for his own advantage, and that this can be prevented only by holding such sales invalid in equity at the option of the *cestui que trust*.

The case of principal and agent falls within the reach of the doctrine, so far as to prevent an agent from purchasing from his principal, unless he acquaints his principal with all he knows as to the value of the property. *Lowther* v. *Lowther*, 13 *Vesey* 103 ; *The York Buildings Company* v. *McKensie*, 8 *Bro. C. C.* 42 ; *White and Tudor's L. C. in Eq.* 130, note to *Fox* v. *McReth*.

But these purchases are not absolutely void, only voidable by the *cestuis que trust* in equity. If the conveyances are made with due legal forms they are good at law. I

entirely concur in the view taken of this question by Mr. Justice Elmer, in *Runyon* v. *The Newark India Rubber Co:*, 4 *Zab.* 473, and in the opinion of the late Chief Justice, in delivering the opinion of the Court of Appeals in *Obert* v. *Obert*, 1 *Beasley* 427, that this is a mere rule of equity, and that the sale is good at law. This is in consonance with established legal principles and the great weight of authority. The rule previously prevailing in the courts of law of this state, that the sale is invalid at law, is against principle and authority, and often leads to great practical inconvenience and injustice. It is understood that in the case last cited the Court of Appeals were prepared to hold that this rule is no longer law in this state, if such had been necessary for the decision of that case.

The defendant in this case relied upon an executory contract between him and his principal, fixing the rate of his compensation at the excess the land should produce on sale over $125 an acre. By the very same contract, he was employed to effect the sale. He was in no sense the general agent of the plaintiff; he had no interest in the lands, as trustee or otherwise. He had no discretion to sell the lands below the fixed price. It was entirely optional with the plaintiff whether he should be employed to effect the sale or not. The plaintiff knew the situation of his land with reference to that of the purchaser, and the motive he had to buy it.

The agent might lawfully, as a condition of his acting as such, stipulate for such a contingent compensation. The plaintiff could agree to pay it or not as he saw fit; he was under no disadvantage by which he was compelled to avail himself of the services of the defendant. No good reason can be assigned why such a contract should be held to contravene public policy when made by competent contracting parties and uncontaminated with fraud.

As to the second point certified, whether, according to the evidence of the defendant, the defendant made the sale to Field.

He found the purchaser, and bargained with him, so far as to induce him to offer to buy the property, the whole, instead of a part. He refused, according to his statement, to take less than $130 the acre; the purchaser said he would try and get it at a less price from the plaintiff; made the attempt and failed, the plaintiff returning the answer he had agreed to give, that he would take no less. The purchaser then said he would give that price. The defendant was so informed, and drew and procured the execution of the necessary writing to complete the sale and bind the purchaser. He commenced the negotiation, and concluded it by the decisive act, the signature of the articles. The plaintiff did nothing except refuse, as he had agreed to do, to take less than $130 per acre. The whole negotiation was with the defendant. The plaintiff merely refused to alter the terms required by the defendant.

That the purchaser first said to the plaintiff, I will take the land at that price, does not affect the question. The services of the defendant would have been no more valuable if the words had been first spoken to him instead of the plaintiff. He fulfilled all his part of the contract, found the purchaser, negotiated the sale, and procured the execution of the contract essential to its completion, so as to bind the parties.

In judgment of law upon these facts he made the sale, and was entitled to the stipulated compensation.

The Circuit Court should be advised accordingly.

HAINES, J. In an action of *assumpsit* Shepherd, the defendant by way of plea and set-off, claimed allowance for services, rendered by him to the plaintiff, in negotiating the sale of a farm. In the case certified, two questions are submitted for the advisory opinion of this court.

*First.* Whether, upon the evidence of Joseph Shepherd, the contract therein stated between the plaintiff and defendant was against public policy, and illegal.

*Secondly.* Whether, according to the evidence of Joseph Field, the defendant in law made the sale to Field.

By the testimony of Shepherd, it appears that he was employed by Hedden to make sale of his farm; that Hedden's price was $125 per acre, and that Shepherd was to have for his compensation all that he could get above that price. If he could sell for no more, he was to have nothing. He was to have the entire control of the sale, and Hedden was to say to any applicant for the farm, that the lowest price was $130 per acre.

The question is, whether such an agreement is against public policy, and so illegal.

The relation of a broker to his principal has long been recognized, and the contracts between them, express or implied, have been held to be in accordance with public policy and lawful. A broker is defined to be an agent who is employed to negotiate sales for a compensation in the form of a commission, which is commonly called brokerage. *Story on Sales*, 64, § 85. In the exercise of his functions, he acts not in his own name, but as a middleman, and negotiates the sale or purchase of personal or real estate. And his services may be of great value in bringing together parties before unknown to each other, or in acting for persons who have not the time, taste, or ability, in that respect, to act for themselves; and I cannot perceive wherein such business can be immoral or illegal, or prejudicial to individuals or to the public, or in anywise in conflict with public policy.

The contract in this case was simply one of a special broker, with the measure of his compensation or brokerage agreed upon, and as such it cannot be considered illegal.

Nor is there anything against public policy in the instruction given by the defendant to the plaintiff to say to persons applying to him to purchase, that the lowest price was one hundred and thirty dollars per acre. It was in accordance with the rule that has frequently been recog-

nized, that while the party who employs a broker is not prevented from making efforts to sell, yet he has no right to make any agreement or sale so as to deprive the broker of his compensation. There is nothing wrong in fixing a minimum price. The purchaser is not deceived by it. He is at liberty to purchase or not, without constraint. If the owner receives his original price, he has no cause of complaint; the advance is but the consideration of the services of the broker in negotiating the sale. The arrangement secures to the owner his price over and above all expenses. There was no fiduciary relation between the parties to be protected by a court, either of law or equity. The plaintiff had fixed his price, and there was no discretion in the defendant to sell for less. The plaintiff had no interest in the excess that was appropriated to the compensation of the agent.

The other question is, whether, according to the evidence of Joseph Field, the defendant in law made the sale.

The rule of law upon that question is, that if the broker bring the parties together, and they agree to the terms of sale, and in consequence thereof a conveyance is made, the broker is held to have done his part, and to have made the sale. If he is the procuring cause of the sale, it is enough. He cannot make the conveyance, for the title is not in him. He is not a factor acting in his own name, but a middleman acting for his principal and in his name. It may be very easy sometimes to bring the parties together; but at other times and under other circumstances it may require much time, labor, and experience in business to find a purchaser and to negotiate a sale. If this is fairly done, the broker is the medium, the procuring cause of the sale, and is entitled to his compensation.

The evidence of Joseph Field is, that Shepherd was the procuring cause. He advertised the property, offered it to Field, knew or discovered his desire for it, saw him

several times about it, urged him to buy, and concluded a bargain with him. He then prepared the written agreement of sale, and had it executed, and at the proper time prepared the deed of conveyance, attended to its execution and to the receipt of the purchase money. He, in short, did everything but execute the deed.

I think the defendant should have had an allowance and set-off to the amount of the compensation agreed upon.

The Circuit Court should be advised to set aside the verdict and grant a new trial.

BROWN, J. Shepherd, the defendant, claims to set off $250 against Hedden's demand, which is not disputed. Hedden employed Shepherd to sell his farm of 50 acres. He asked for it $125 per acre, and agreed to give Shepherd, as compensation, all he got over that price. He agreed, at Shepherd's suggestion, to ask $130 per acre, and not to interfere with Shepherd in his negotiation for the sale. Hedden was eighty years old and blind. Shepherd knew that Field, the owner of the adjoining land, wanted part of the property, because of a right of way over his land appurtenant to Hedden's. Shepherd saw Field two or three times, and urged him to buy at $130 per acre. Field afterwards went to Hedden, and inquired if that was the lowest price, and on being told it was, said he would take it. Shepherd soon after went to Field with an agreement for the sale, and he and Field executed it. The deed was afterwards executed by Hedden, and the price, $130 per acre, paid to him. Shepherd practiced law in the lower courts, though not licensed, and had charge of Hedden's law business. Upon this case two questions are certified. The first is, whether this contract is not against the policy of the law and void.

1. It is insisted that the mode of fixing compensation unites adverse interests between the agent and principal;

that it is the interest of the owner to sell when he can get his price, and of the agent not to sell until he can get more, and as much more as possible.

Granting this, are the parties restrained from making such a contract by the policy of the law? The rule of law is, that the agent shall not *put himself* in a position which is averse to that of his principal, and the reason assigned is, that the principal is presumed to have bargained for the exercise of all the judgment, skill, ability, and industry of the agent, and is entitled to demand the exertion of all this in his own favor. *Story on Agency*, § 200; 1 *Parsons on Con.* 74. But this rule fails, as all others do, with the reason for it. A principal may, if he chooses, leave everything or nothing to the judgment, skill, and ability of the agent, and may, by the contract, create an identical or adverse interest without infringing any rule of law. He may trust the judgment and ability of the agent, or make him a mere servant to do certain things in a certain way, and no other. That this power is not restrained by the rule above mentioned, is manifest from the fact that, if the agent does *put himself* in an adverse position, as by buying for himself what the principal has to sell, or, selling for himself to the principal what he has it in charge to buy for him, the contract is in force, if the principal, understanding all the facts, chooses to ratify it. What he may legally ratify when done he may legally direct to be done. In case of the usual agency to sell an estate, the law presumes that the principal desires to sell for as high a price as can be fairly obtained, and the purchaser to buy as low as he may, and therefore the agent cannot make himself the purchaser and judge in both capacities, if not within the scope of the agency. But if the principal fixes the price for which he is willing to sell, and gives his agent for compensation only what the property may bring over that price, there is no room for the application of the rule. The agent might say, I'll take it at your offer, and risk finding my compensation in

the true value of the property. In fixing the compensation by this mode, the principal may lose a sale at his price, as the agent will not or may not sell unless he gets a higher price; but this risk the principal chooses to run for the sake of getting his price without abatement for expenses. It is not unusual, especially in partnerships, to fix compensation in that way. The partner furnishing the capital agrees to give the managing partner, for his services, all above a certain percentage of the profits. *Story on Part.,* §§ 32, 41.

Again, it is insisted that the relations between the parties are fiduciary, and that the law will not sanction a contract between them by which the agent acquires an interest in the principal's estate. This is true at law only in case of actual fraud. On that ground any contract is vitiated. But the doctrine of constructive fraud is the creature of courts of equity, and should be confined to that jurisdiction. Even there, such contracts are not void, but only voidable upon the terms that the party seeking to annul them shall do equity. In this case, if Hedden could succeed in avoiding payment of the compensation agreed upon, it would be upon condition of his making payment of what was reasonable. There is no proof of actual fraud. It is said that Shepherd should have told Hedden that the property was worth more than $125 per acre; but it is manifest, from the terms of the contract, that both parties thought it was worth more, or would bring a larger price. It is said, also, that Shepherd should have informed Hedden that Field wanted a part of the property, in order to extinguish the right of way over his adjoining lands; but it does not appear that he did not know it, though he was a witness in the case. To assume that he did not know of the way, or that Field would like to be rid of it, or that either fact was fraudulently suppressed by Shepherd, would not be warranted by the case, and would be against all probability.

The other question certified is, whether, in fact, Shep-

herd did make the sale so as to entitle him to the compensation. The contract did not contemplate that he should make the title, or even an agreement for the title, in legal form; he had no power to do so. He could only be the efficient cause of the agreement to sell; that is all the contract required of him. It appears that he advertised the property, fixed the terms, saw the purchaser several times, and urged these terms upon him; and that the purchaser, after ascertaining from Hedden that $130 was the lowest price, agreed to take the property. If there was any question but that Shepherd procured the sale, found the purchaser and brought him to the terms demanded, it should have been left to the jury as a question of fact.

ELMER, J., concurred.

CITED in *Morris* v. *Ruddy*, 5 *C. E. Gr.* 238.